## VANDIVER *v.* UNITED STATES (No. 614).[1]

CORKINE, BY SIMILITUDE LINOLEUM.

The value of the component parts of the importation as of the time these were ready to be joined to complete the article, can not be computed on the data furnished by the record here. The importer having failed to establish his contention that the goods are manufactures in chief value of cork, paper, wood pulp, or wood, and there being some evidence tending to show the goods were dutiable by similitude to linoleum, and accordingly prima facie not subject to the provisions of section 6, tariff act of 1897, the protest in this case must be held to have been rightly overruled. It should be overruled even though the collector had made an unacceptable finding.

United States Court of Customs Appeals, February 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 24728 (T. D. 31255).

[Affirmed.]

*Joseph G. Kammerlohr* for appellant.

*Wm. K. Payne*, Deputy Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The appellant in this case imported for the Palruba Manufacturing Co. a certain article of merchandise called "corkine." The importation was returned by the proper customs officer as surface-coated paper and assessed for duty by the collector of customs at Philadelphia at 3 cents per pound and 20 per cent ad valorem under the provisions of paragraph 398 of the tariff act of 1897, which paragraph, in so far as it is material to the case, is as follows:

398. Surface-coated papers not specially provided for in this Act, * * * if printed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, three cents per pound and twenty per centum ad valorem. * * *

The importer objected to the classification of the merchandise, and as grounds of protest set up the claim that the corkine was dutiable either as a nonenumerated manufactured article under the provisions of section 6, or as a manufacture in chief value of cork under paragraph 448, or as a manufacture in chief value of paper under paragraph 407, or as a manufacture of wood pulp under paragraph 433, or as a manufacture in chief value of wood under paragraph 208, which said section and paragraphs are as follows:

SEC. 6. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.

448. Manufactures of amber, asbestos, bladders, cork, catgut or whip gut or worm gut, or wax, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, twenty-five per centum ad valorem.

---

[1] Reported in T. D. 32246 (22 Treas. Dec., 224).

407. Manufactures of paper, or of which paper is the component material of chief value, not specially provided for in this act, thirty-five per centum ad valorem.

433. Indurated fiber ware and manufactures of wood or other pulp, and not otherwise specially provided for, thirty-five per centum ad valorem.

208. House or cabinet furniture, of wood, wholly or partly finished, and manufactures of wood, or of which wood is the component material of chief value, not specially provided for in this act, thirty-five per centum ad valorem.

The Board of General Appraisers overruled the protest and the importer appealed.

On the hearing before the board no evidence was introduced except samples of the merchandise and the testimony of U. G. Goodman and Frederick Lewis Gray, both of whom testified on behalf of the importer. The testimony of the witness Goodman seemed to be based on information derived from the manufacturer rather than on personal knowledge. He did say, however, that he had disintegrated some of the merchandise and found that the body of the goods was paper which was faced with a printed varnished paper and backed with a preparation of cork. He further stated that corkine was used as a floor covering or as a "surround" or border for rugs. Frederick Lewis Gray, manager for the manufacturers, whose deposition was taken at London, England, before the deputy consul general of the United States, declared that the corkine was made as a cheap substitute for oak flooring, or as a veneer to give a floor the appearance of oak, or as a surround for rooms. He also gave evidence showing the composition of the merchandise and the relative unit values of its constituents. According to this witness the same methods and machinery employed in the manufacture of linoleum and floorcloth are used in the manufacture of corkine, which, he said, was made up of paper valued at 15s. 6d. per hundredweight, less 5 per cent discount; ocher, at 4s. per hundredweight; chrome, at 35s. per hundredweight; whiting, at 9d. per hundredweight; Vandyke brown, at 10s. per hundredweight; linseed oil, at 35s. per hundredweight; varnish, at 90s. per hundredweight; ground cork, at 12s. per hundredweight; lampblack, at 24s. per hundredweight; litharge, at 15s. per hundredweight; rosin, at 13s. 6d. per hundredweight. The witness declined to give the quantities, relative proportions, or total values of the materials used. He said, however, that the foundation material of corkine was kraft paper, that 44 per cent of the finished product was linseed oil, and that varnish was the most costly article in the whole composition, but failed to say how much of it was used. It is clear that the value of each component as of the time that it was ready to be joined to the other components in order to form the completed article can not be computed on the data furnished by this evidence. Apparently the unit value of the various constituents stated by the witness Gray was their value in the market.

On the assumption that that value had not been increased by further processing it might be reasoned out that either linseed oil or varnish or chrome was the constituent of chief value.   We can not assume, however, in this case that the market value of all the components was their value at the time they were ready to be put together in order to constitute the finished product.   Kraft paper, which was both the foundation and the surfacing material, and cork, which was the backing material, might well have the market values stated, and yet as elements prepared, treated, and processed for the manufacture of corkine, either might have a greater value than linseed oil, varnish, or chrome.   The value of the component materials should be determined as of the time when they have reached such a condition that nothing remains to be done upon them by the manufacturer except to put them together.   United States *v.* Meadows (2 Ct. Cust. Appls., 143; T. D. 31665); Seeberger *v.* Hardy (150 U. S., 420).   The importer having failed to establish the value of the materials as of the time that they were ready to be converted into corkine, his claim that the goods are manufactures in chief value of cork, paper, or wood, must lapse for lack of the definite proof which it was his duty to make.

As to whether the goods are dutiable under the provisions of section 6, we must say, as has been frequently said before by the courts, that recourse can be had to that section only in case the importation is not, in material, quality, texture, or use to which it may be applied, similar to any article enumerated in the act.   Ross. *v.* Peaslee (20 Fed. Cas., 1241, 1242).   In this case the testimony showed that the methods and machinery employed in the manufacture of corkine are those employed by the same factory in the manufacture of linoleum and floorcloth.   Admittedly linseed oil and cork are important elements in its composition.   The importer and the manufacturer's managing agent agree that it is intended and designed to be used as a covering for floors, or as a veneer, or cheap substitute for oak floors.   This particular importation was manufactured for the Palruba Manufacturing Co., a concern engaged in the business of importing floor coverings.   The samples in evidence bear a noticeable resemblance to thin linoleum, which is a floor covering and commonly understood to be a mixture of linseed oil and cork pressed into canvas or some other equivalent material.   Taking the testimony of the witnesses and the samples together, we think there was evidence tending to show that the importation was to some degree similar in material and use to linoleum, which is one of the articles enumerated in paragraph 337.   The evidence to that effect was, of course, not at all conclusive nor even wholly satisfactory.   Nevertheless, we think it was sufficient to exclude the goods from the operation of section 6 in the absence of anything to the contrary.

The importer having failed to establish by sufficient evidence that the goods are manufactures in chief value of cork, paper, wood pulp, or wood, as claimed by him, and there being some evidence tending to show that they are dutiable by similitude to linoleum and therefore prima facie not subject to the provisions of section 6, we must, even if we disagreed with the finding of the collector, sustain the board in overruling the protest.

The decision of the Board of General Appraisers is *affirmed*.