United States *v.* Gredelue  (No. 1336).[1]

Bowl of Blown Glass with Stem and Foot Molded.

This glassware is composed of blown bowls with molded stems and feet. There was no evidence by which a finding could be made of the value of the blown bowl or that of the molded stem and foot when these first took on the character of blown or molded glass; and the finding of the collector that blown glass was the component material of chief value was unimpeached.

United States Court of Customs Appeals, May 18, 1914.

Appeal from Board of United States General Appraisers, G. A. 7519 (T. D. 34023). [Reversed.]

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, of counsel), for the United States.
*Comstock & Washburn* for appellee.

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Smith, Judge, delivered the opinion of the court:

Plain stem glassware, imported at the port of New York, was classified by the collector of customs as glassware composed wholly or in

---
[1] Reported in T. D. 34476 (26 Treas. Dec., 862).

chief value of blown glass and assessed for duty at 60 per cent ad valorem under the provisions of paragraph 98 of the tariff act of 1909, which paragraph, in part, reads as follows:

98. * * * All articles of every description, including bottles and bottle glassware, composed wholly or in chief value of glass blown either in a mold or otherwise; all of the foregoing, not specially provided for in this section, * * * sixty per centum ad valorem; * * *.

The importer protested that the goods were manufactures wholly or in chief value of glass or paste and that they were not dutiable at 60 per cent ad valorem, but at 45 per cent ad valorem under the provisions of paragraph 109 of said act, which paragraph in so far as pertinent reads as follows:

109. * * * All glass or manufactures of glass or paste or of which glass or paste is the component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

The Board of General Appraisers sustained the protest. Subsequently a rehearing was granted and after a retrial of the issues the protest was again sustained. The Government appealed.

The merchandise in question, as appears from the samples and the evidence adduced at the hearing before the board, consists of a variety of water, wine, and cocktail glasses, having a stem and foot of molded glass and a bowl of blown glass. As appears from the record, the wares are manufactured in France and are made from glass of the same grade, kind, and quality.

The blowing of a quantity of molten glass in a mold is the first step in the process of manufacture and results in producing an amphora-shaped vessel, topped by a boss of glass, which is subsequently "cracked off" or removed in order to produce a perfect bowl. While the boss-topped bowl is still hot a piece of molten glass is attached by another operator to the bottom and drawn and molded by him into a stem. To the stem is then stuck an additional piece of molten glass, which is fashioned by still another workman into the foot upon which the glass is intended to stand when completed. On the original hearing before the board, A. Gredelue, the importer, testified in his own behalf that the blowing of the bowl requires no particular skill and that the man employed for that purpose receives 25 per cent less than the skilled artisan who makes the stem and 40 per cent less than the skilled artisan who makes the foot. He fixed the value of a finished stemmed water glass or goblet at 45 centimes, 15 centimes of which represented the value of the finished bowl, 15 centimes the value of the finished stem, and 15 centimes the value of the finished foot. He stated that the value of the bowl of the goblet was one-third and the value of the stem and foot two-thirds of the value of the completed article,

which proportionate values he claimed were applicable to all other exhibits in the case. He further declared that the value of a water glass without a stem or foot and having the same capacity as the goblet would be about 15 centimes. From the testimony of this witness and that of other witnesses it appears that after the bowl is blown and the stem and foot are molded the article in its assembled form is submitted to other manufacturing processes, and that the values stated were the values of the completed product and of its constituent parts just as they appeared in the exhibits. Gredelue declined to state either the cost of the labor or the cost of the material employed in making the bowl, the stem, or the foot, and based his refusal on the ground that to do so would result in divulging a trade secret and on the further ground that he had no authority from the manufacturing company to furnish detailed information as to the cost of manufacture.

The board found that the glassware under consideration was composed of a bowl of blown glass and a stem and foot of molded glass, and that the value of the molded glass exceeded the value of the blown glass. We think that the finding of the board as to the composition of the merchandise was correct, but that there was no evidence upon which it could base any finding as to the value of the blown bowl or of the molded stem and foot. The testimony of the witnesses who testified on the subject was not directed to the value of the bowl immediately after it had been blown or to the value of the stem and foot immediately after those components of the glassware had been molded. The values stated were the values of the bowl, stem, and foot just as they stood in the completed article and not their values immediately after they had taken on the character either of a blown bowl or of a molded stem or foot. In order to determine the component of chief value, the value of the bowl should have been taken as of the time when it became blown glass, and the value of the stem and foot as of the time when they were given their form by molding. Once the bowl was blown and the stem and foot were fashioned, the cost of further processing was chargeable to the whole article and not to its parts. As there is no evidence from which the cost of such further processing can be determined and subtracted in the proper proportion from the values of the bowl, stem, and foot as they appear in the exhibits, we are unable to say what was their value when they first took on the character of blown or molded glass.

The finding of the collector that blown glass was the component material of chief value is therefore not impeached, and from that it follows that the decision of the Board of General Appraisers must be *reversed.*