FIELD & CO. v. UNITED STATES (No. 1745).[1]

1. "COMPONENT MATERIAL OF CHIEF VALUE," ASCERTAINMENT OF.
    In determining which is the "component material of chief value" under paragraph 386, tariff act of 1913, of a fabric with a warp yarn of wool and a weft yarn of mixed wool and mohair, the proportion of wool in the weft yarn should be added to that composing the warp yarn. The fact that the weft yarn is in chief value of mohair does not warrant the assumption for this purpose that it is entirely mohair.

2. EVIDENCE, SUFFICIENCY OF.
    The positive, uncontradicted testimony of one competent, credible witness that he found a certain yarn to contain a percentage of 25 or more of wool is sufficient to establish that as a fact in the case.

3. WOOL AND MOHAIR FABRIC, HOW DUTIABLE.
    Cloth invoiced as "sateen" or "standard," with a warp yarn of wool and a weft yarn of mohair and wool, the wool in the two yarns being more valuable than the mohair, is dutiable under paragraph 288, tariff act of 1913, as cloth in chief value of wool, and not under paragraph 308 as cloth in chief value of the hair of the Angora goat.

---

[1] Reported in T. D. 36876 (31 Treas. Dec., 578.)

# United States Court of Customs Appeals, December 2, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7920 (T. D. 36487).

[Reversed.]

*Crim & Wemple* (*William L. Wemple* of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

[Oral argument October 24, 1916, by Mr. Wemple and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now in question is certain cloth invoiced as " sateen " or " standard," and imported under the tariff act of 1913.

The goods were returned by the appraiser as woven fabrics composed in chief value of hair of the Angora goat. They were accordingly assessed with duty at the rate of 40 per cent ad valorem under the provisions of paragraph 308 of the act, for cloth in chief value of the hair of the Angora goat not specially provided for.

The importers protested, claiming assessment of the merchandise at the rate of 35 per cent ad valorem under the provisions of paragraph 288 of the act for cloth in chief value of wool not specially provided for.

The protest was submitted to the Board of General Appraisers and was overruled, General Appraiser Brown dissenting. The importers now appeal.

It thus appears that the sole issue before the board was whether the cloth in question is composed in chief value of wool or of the hair of the Angora goat.

The following provisions of the tariff act are copied for reference:

288. Cloths, knit fabrics, felts not woven, and all manufactures of every description made, by any process, wholly or in chief value of wool, not specially provided for in this section, 35 per centum ad valorem; * * *.

308. Cloth and all manufactures of every description made by any process, wholly or in chief value of the hair of the Angora goat, alpaca, and other like animals, not specially provided for in this section, 40 per centum ad valorem.

386. * * * And the words " component material of chief value," wherever used in this section, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * *

It appears from the record that the warp yarn of the imported goods is composed exclusively of wool, whereas the weft yarn is composed of mixed wool and Angora goat hair. It appears that the mixed yarn, taken as yarn, is more valuable than the all-wool yarn. It furthermore appears that the mohair content of the mixed yarn is more valuable than the wool content thereof. It is to be regretted that the record does not disclose with greater certainty whether the

mixed yarn may be exactly separated into its constituent materials so as to discover the respective proportions of wool and mohair contained therein. The board held, in the majority opinion, that the testimony failed to show the proportions of wool and mohair composing the mixed yarn. We think, however, that the testimony sustains the claim that such a separation is practicable, and that the mixed yarn is shown to consist of about one-fourth wool and about three-fourths mohair. We are not unmindful in this particular of the rule of law which favors the board's finding of fact based upon conflicting testimony in appealed cases. The immediate question, however, does not involve conflicting testimony nor require a decision upon the weight of the evidence or the credibility of witnesses. It depends solely upon a reading of the uncontradicted testimony of a single witness, who is conceded to be truthful and reliable.

This witness was the Government chemist, J. A. Hynes, who testified in part as follows:

Q. And shortly after this merchandise was first imported did you analyze this sample?—A. I did.

Q. And what was the result of this first analysis?—A. It was reported to the examiner and classified as consisting of a mohair weft and wool warp, mohair chief value.

Q. And shortly after that analysis did you conduct an investigation to ascertain more fully the manufacture and construction of this merchandise?—A. I did.

Q. And after you had received this report did you analyze this fabric again in order to determine the material of chief value?—A. No; but analyzed for the purpose of verifying certain claims set forth by the manufacturer in his report to our confidential agent who investigated the case.

Q. Recite one of the cases you verified.—A. The special commissioner, Chance, of London, through one of his employees or agents inspected the manufacture of this merchandise and reported it as follows: To consist of a wool warp with wool and mohair weft, the mohair and wool being spun together to compose the weft threads. In this report he submitted certain figures as to the value of the warp yarns which were wool and as to the value of the wool and the mohair composing the weft yarns. My specification in this was for the purpose of determining if the weft yarns did actually contain wool and mohair, and these weft yarns were found to contain wool and mohair.

Q. In your first analysis did you or did you not report that the weft yarns were composed entirely of mohair?—A. Yes.

Q. (By General Appraiser McClelland.) Did you find anything in your second analysis which led you to change your opinion?—A. Yes; when the first analysis was made we mounted a very small quantity on a microscopic slide, and inasumch as it is not customary to mix wool and mohair in one thread, the presence of mohair in the weft yarns led me to believe that the yarn was composed entirely of mohair.

Q. Did you actually find wool on your second analysis?—A. Oh, yes.

Q. In the weft?—A. In the weft; yes.

Q. (By Mr. Nay.) You have been called upon from time to time to make analyses of fabrics, for instance, composed of cotton and flax?—A. Yes.

Q. And in determining the component material of chief value your method is to separate the flax fibers from the cotton fibers?—A. Oh, yes.

Q. In analyzing this fabric by separating the wool of the sheep from that of the wool of the Angora goat and determining the value of the two, which would be the component material of chief value?—A. It would be impossible, of course, to separate the wool of the mohair in the weft yarn, because they are spun together in one thread.

* * * * * * *

Q. (By General Appraiser McClelland.) In view of your discovery upon the second analysis that there was some wool in the weft, were you able to say which was the material of chief value?—A. In the fabric as an entirety?

Q. As an entirety?—A. My judgment would be that wool would be the chief value, taking, of course, the combination wool of the warp and the weft on the one hand as against the mohair in the weft of the other; that would be my judgment.

Q. Suppose you had had the information on the first analysis that you had on the second, what would your return have been?

Mr. Mulvaney. Same objection to that question.

Overruled. Exception.

A. Had I the information of the first case that I had in the second case I would have reported it as wool chief value.

Q. (By Mr. Mulvaney.) And to do that you would have separated the wool from the mohair in the weft thread?—A. I would have had to arrive at the conclusion. I would reason thus: The warp thread, which is composed entirely of wool, is nearly the same weight and nearly same value as the weft threads, hence the presence of a fairly good percentage of wool in the weft, plus which is already in the warp would unquestionably throw it on the side of wool.

Q. What do you mean by fairly good percentage?—A. 25 or better.

Q. Was that percentage present in this?—A. So far as one could judge by microscopic examination.

Q. You were satisfied there was a fairly good percentage of wool in that weft thread?—A. Yes.

We understand the witness to say, in the foregoing testimony, that when he first examined the present merchandise he concluded that the weft consisted of mohair only, and that the warp was all wool, but that an investigation in which he took no part was set on foot, which resulted in a report that the weft thread was in fact composed in part of wool; that thereupon he made a personal examination of the weft thread again by the aid of a microscope, and perceived that it was composed of wool fibers to the extent of 25 per cent or more.

It therefore appears that the warp yarn of the imported cloth is all wool, that the weft yarn is about one-fourth wool and three-fourths mohair, and that the wool contained in the two yarns if taken together exceeds in value the mohair contained in the single yarn. Upon this state of fact we hold that wool is the component material of chief value in the cloth in question, and that it should accordingly be assessed with duty as cloth made in chief value of wool under paragraph 288, *supra*, as claimed in the protest.

The Government, however, contends that even if the foregoing facts be accepted as a basis of judgment, the merchandise must neverthe-

less be classified as cloth composed in chief value of mohair. In that behalf the Government cites the provisions of paragraph 386, *supra*, that "the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article," and contends that the wool and mohair are found in the woven cloth in the condition of spun yarns, and hence that the yarns as such must be compared with one another in value, and the more valuable yarn must be accepted as the component material of chief value in the cloth. The Government further contends that in making a comparison of values between the two kinds of yarn in the cloth the mixed yarn should be considered as if composed entirely of mohair, since mohair is in turn its component material of chief value. According to this claim the cloth itself would of course be found to be in chief value of mohair, since the mixed yarn, as above stated, is more valuable than the all-wool yarn, and mohair is the constituent of chief value in the mixed yarn. In other words, according to this method of comparison the entire value of the mixed yarn, including both its mohair and wool content, would be accredited to the mohair content thereof alone, since mohair is the more valuable constituent thereof, and the woven goods accordingly would be held to be composed in chief value of mohair, notwithstanding the fact that the wool content of the two yarns, and therefore of the cloth itself, is more valuable than the mohair content thereof.

We are unable to find any authority for this claim of the Government. The rates of duty which are imposed upon cloth by the paragraphs above copied differentiate between such cloth as is composed in chief value of wool, and such as is composed in chief value of Angora goat hair. Accordingly the wool content of the present cloth must be compared in value with the mohair content thereof, in order to determine whether wool or Angora goat hair is the component material of chief value therein. As stated above, such a comparison is practicable in the present case notwithstanding the fact that wool appears in both the warp and weft of the cloth, while mohair appears in the weft only. It is true that the value of such material is to be ascertained in its condition as found in the cloth, hence the cost of bringing the wool to that condition should be added in with the value of the wool as a component material thereof, and the cost of bringing the mohair to the same condition should be similarly treated. In the case of the mixed yarn such cost as thereby accrued upon the two materials in common should, in the absence of any specific showing to the contrary, be divided between the respective materials in proportion to their relative quantities as constituents thereof, since the common cost would have accrued upon the several materials in that proportion. In this manner the legislative purpose of comparing the value of the wool content of the cloth with the value of the

Angora goat hair content thereof, for the purposes of classification under paragraphs 288 and 308, *supra*, would be complied with. On the other hand, according to the Government's contention, the comparison of value in the present case would not be between the component materials which are named in the competing paragraphs, to wit, wool and Angora goat hair, but between yarns as such. If, however, we adopt such a method of comparison as results in adding the value of other and different materials to one of the two competing materials in question, the legislative purpose would be defeated, for in such case the dutiable cloth might be classified as in chief value of one material when in fact it would be composed in chief value of an entirely different one.

The present question is identical with that decided by the Board of General Appraisers in the case of McCutcheon, G. A. 6296 (T. D. 27155). The merchandise in that case was crash, the weft yarn being cotton alone, the warp yarn being flax and jute combined. In passing upon the issue of component material of chief value in that case, the board, by De Vries, G. A., said:

We find as facts herein that the merchandise consists of a cotton yarn and a so-called flax yarn made of flax and jute. We further so find that as compared one with the other cotton predominates in value.

We are of the opinion that the claim of the protestants is well taken.

The so-called flax yarn that was introduced in the manufacture of the goods is not a *single* component material as required by the statute, but is itself a manufacture of *two* single component materials, to wit, flax and jute. Section 7 of the tariff act of 1897 provides that in the ascertainment of the component material of chief value in a fabric it shall be according to "that component material which will exceed in value any *other single component* of the article." It seems to us clear and beyond controversy that the *single* component material going to make up the flax yarn in the first instance are flax and jute, and the fabric in the second are cotton, flax, and jute.

The same question was before the board for decision in protest 36214f, March 2, 1899, unpublished decision (vol. 327, p. 64), in which the board reached the identical conclusion arrived at in this case. That case was appealed to the United States Circuit Court for the Southern District of New York, and on such appeal affirmed. See United States *v.* Churchill (106 Fed., 672).

The same reasoning was adopted by the board in G. A. 6112 (T. D. 26609). We think this case so clearly beyond controversy that further comment is unnecessary upon this point.

We think that the foregoing decision and the authorities therein cited furnish the correct rule of decision in the present case.

We are referred by the Government to a number of decisions which relate to the statutory provisions in question, among them being Seeberger *v.* Hardy (150 U. S., 420); United States *v.* Hoeninghaus (137 Fed., 478); United States *v.* Johnson (154 Fed., 39); United States *v.* Meadows (2 Ct. Cust. Appls., 143; T. D. 31665); Bing *v.* United States (3 Ct. Cust. Appls., 211; T. D. 32532); United States *v.*

Gredelue (5 Ct. Cust. Appls., 298; T. D. 34476). An examination of the foregoing cases, however, will disclose the fact that in each case the component material of chief value in the article in question was ascertained by means of a comparison in values between the single or separate constituent materials thereof, and that in no case did the court in making such a comparison accredit to any material the value of other materials which were physically combined with it in the manufacture of the article. The cited authorities therefore do not directly touch upon the question which is decisive of the present case.

The decision of the board overruling the protest is therefore *reversed.*