H. N. HILL & Co. *v.* UNITED STATES (No. 4189)[1]

United States Court of Customs and Patent Appeals, January 23, 1939

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Ralph Folks* and *Marcus Higginbotham*, special attorneys, of counsel), for the United States.

[1] C. A. D. 31.

[Oral argument December 9, 1938, by Mr. Allerton deC. Tompkins and Mr. Folks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

There is here brought before us for review the judgment of the United States Customs Court, First Division, in a suit brought by appellant, by protest in conformity with the statute, to recover certain duties assessed and collected on merchandise described as dryer felts or belts used as conveyors for the drying of paper on a papermaking machine, such judgment having overruled the protest.

The collector classified the merchandise under paragraph 1501 (a) of the Tariff Act of 1930, which reads:

PAR. 1501. (a) Yarn, slivers, rovings, wick, rope, cord, cloth, tape, and tubing, of asbestos, or of asbestos and any other spinnable fiber, with or without wire, and all manufactures of any of the foregoing, 40 per centum ad valorem.

Appellant relies upon claims alternatively made in the protests under paragraphs 913 (a) and 1501 (d), reading, respectively, so far as here pertinent:

PAR. 913. (a) Belts and belting, for machinery, wholly or in chief value of cotton * * * 30 per centum ad valorem.

PAR. 1501. (d) All other manufactures of which asbestos is the component material of chief value, 25 per centum ad valorem.

Several protests are involved, the suits having been consolidated for trial. It was stipulated by counsel that protest 705345–G/8614 is typical of all, and, with the approval of the court, only that protest with the appraiser's answer thereto and the collector's letter of transmittal, was printed in the record presented on the appeal.

The merchandise was imported from Belgium where it was manufactured by a concern styled "von Asten & Co.," of which one Eduard von Asten, a witness in the case on behalf of importer, testified that he was president and technical man.

From the testimony and from samples introduced as evidence it appears that the belts, sometimes referred to as felts, are of different widths and lengths, the widths of those imported ranging from 54 inches to 112 inches and the lengths from about 28 feet to 97½ feet. They are composed of two kinds of yarns, viz, cotton yarns and asbestos yarns, the latter being spun into strands about a cotton fiber with cotton yarns intermingled with the asbestos. For convenience, the portion consisting wholly of cotton yarns may be thought of as the base. The yarns which compose this base seem to have been procured by the manufacturer in the Belgian market. The articles composed of asbestos, cotton yarns, and cotton fibers were imported into Belgium from England where they were manufactured by a company styled in the record "Turner Bros. Asbestos Co., Ltd."

A director of this company by the name of Bussy testified on behalf of appellant, his testimony being taken by interrogatories. Harold N. Hill, of the importing company, also testified on its behalf.

The Government took no testimony.

It is the contention of appellant that when the value of the cotton yarn and cotton fiber used in making the article (asbestos yarn and cotton yarn spun together about the fibers) procured in England is added to the value of the cotton yarn procured in Belgium and used in what we have described as the base, the total value of the cotton in the completed belts exceeds the value of the asbestos included therein, and so renders the articles in chief value of cotton; hence it made the claim under paragraph 913 (a), *supra*, upon which appellant primarily relies, which we shall first consider. The brief on behalf of appellant says:

Of course, in determining whether in the imported belts cotton or asbestos constitutes the component material of chief value, the values of the cotton contained in the so-called asbestos yarn, as well as the values of the cotton in the cotton yarn per se, must be taken into account, *Field & Co.* v. *United States*, 7 Ct. Cust. Appls. 332, T. D. 36876.

In its decision the trial court said:

It will be observed that the first clause of paragraph 1501 (a), covering "yarn, slivers, roving, wick, rope, cord, cloth, tape, and tubing", does not provide that such materials must be in chief value of asbestos, but that they may be made "of asbestos, or of asbestos and any other spinnable fiber." The belting at bar is composed of asbestos and another spinnable fiber, viz, cotton; but, as the evidence shows it is belting for machinery, it is something more than "yarn, slivers, roving, wick, rope, cord, cloth, tape, and tubing." It is a *manufacture* composed of yarn of asbestos and cotton. It would not therefore be dutiable under the first clause of subdivision (a); but, it seems to us, *unless it is in chief value of cotton*, being a manufacture of yarn "of asbestos and any other spinnable fiber", viz, cotton, it would be dutiable as classified by the collector, under the last provision of subdivision (a) as "manufactures." * * *

The merchandise, being belting, if it is in chief value of *cotton* would fall under paragraph 913 (a). This is the essential question in this case. The proof establishes it is belting; but does it establish that this belting is in chief value of cotton?

It has been frequently held "that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article." (*United States* v. *Rice-Stix Dry Goods Co.*, 19 C. C. P. A. 232; *Same* v. *Mrs. S. Bacharach*, 18 id. 353.)

In the *Bacharach* case, *supra*, the court stated:

It will thus be seen that the dutiable value of the two parts of an article has little if anything to do with the determination of the component material of chief value, * * *.

The court then analyzed the testimony and held it insufficient to show that the belts are in chief value of cotton.

The Government does not challenge the correctness of the contention quoted above from appellant's brief, nor the correctness of the

trial court's construction of the paragraphs, but, in effect, argues that the court was correct in holding that the evidence introduced on appellant's behalf is insufficient to establish the essential fact upon which the contention is based. In other words, it is claimed that the presumption of correctness attaching to the collector's classification was not rebutted by satisfactory evidence.

We have quite carefully reviewed the testimony in the light of appellant's brief and oral argument, and find ourselves in agreement with the trial court's description of the record as being "very obscure."

The testimony of the witness Bussy as to the costs or value of the different items (cotton fiber, cotton yarn, and asbestos yarn) which entered into the article produced in England is of little aid in determining such values. He testified as to the prices, giving same in English currency, at which sales were made to von Asten & Co., "f. o. b English port," of the complete article manufactured by his concern. He also stated that the quantities of the respective materials in a given weight or length of the article were "Cotton fiber, 9 percent; Cotton yarn, 14 percent; Asbestos, 77 percent," and further that the cost to *his concern* (the question reading: "Please state in percentage terms the costs to *you*." * * *) [italics ours] for the respective items was "Cotton fiber, 12 percent; Cotton yarn, 28 percent; Asbestos, 60 percent," but expressly declined to give even *his* purchase price of each of the materials, and his cost of processing each, saying that he knew but that such information was confidential and that he could not divulge it. He stated that the prices at which the articles were sold to the Belgian company f. o. b. English port included packing, but not Belgian duty or freight, and there is no evidence whatever in the record respecting the question of freight or Belgian duty.

The testimony of the witness von Asten, the Belgian manufacturer, was given orally before the trial court. The substance of it is fairly recited in that court's opinion as follows:

The witness Von Asten, although he bought the cotton yarns and asbestos yarn in this belting, could not say exactly what he paid therefor at the date of these shipments in 1933; but, "beginning of this year" (meaning 1933, evidently), "my price has been 2.20 gold francs, Swiss francs * * * for 1 kilo of asbestos yarn, and it has changed to the end of the year to 1.96 Swiss francs, or gold francs, for 1 kilo of asbestos yarn. So what is in these felts lies between these two figures." He testified that these figures relate to "The asbestos yarn as I bought it * * * from Turner Brothers of Rochdale, England." This asbestos yarn, however, is not entirely asbestos, but a mixture of "asbestos and 15 percent of cotton fiber." Referring to the prices of the cotton yarn in this merchandise he testified that at the beginning of 1933 the price was 1.25 Swiss francs per kilo "and 1.33 at the end of this year" (1933), and that there was a gradual increase in price from the beginning to the end of the year. He did not know the value of the fiber contained in the asbestos yarn.

He gave the following percentages by *weight* of the asbestos and cotton in these exhibits:

Exhibit 1, about 57% of asbestos yarn and about 43% cotton yarn.

Exhibit 2, about 61% asbestos and 39% cotton yarn "as average."

Exhibit 3, 54% asbestos and 46% cotton.

On cross-examination, however, he testified he did not weigh these yarns himself, and that he does not buy the asbestos yarn already woven, but wove it himself; that he buys his asbestos from one concern and his cotton yarn from another.

In attempting to separate the values of the component materials of the belts, appellant's counsel presents a number of calculations based upon the prices testified to by von Asten and the respective percentages of such materials as testified to by both von Asten and Bussy.

In making the calculations, counsel (first insisting that the record showed von Asten & Co. to have paid 1.25 to 1.33 Swiss francs per kilo for the cotton yarns purchased in Belgium, and 1.96 to 2.20 Swiss francs for the asbestos yarns in the English product) took the lower figure, 1.25, and applied it to the percentage of cotton claimed to have been woven into what we have designated the base of the belts as testified to by von Asten; then took the same figure and applied it to the percentages of cotton (fiber and yarn) claimed to have been contained in the product imported into Belgium from England, as testified to by Bussy, and to the percentage of asbestos yarn, as stated by Bussy, applied the highest figure (2.20 Swiss francs) which von Asten testified he paid the English concern for such asbestos yarn.

The difficulty with accepting these calculations as establishing appellant's contention that the articles here involved were in chief value of cotton (assuming, without holding, that the figures and percentages of material are satisfactorily established) lies in the fact there is applied to the cotton content of the English product the Belgian cotton price. As has been indicated, there is no showing of the cost of the cotton *fiber* (as distinguished from the cotton *yarn*) of the English product. Indeed it may be said that there is no evidence as to the prices, even in England, of the cotton materials separated from the asbestos material, and certainly there is no convincing evidence that the prices of the cotton materials included in the articles imported from England were the same as those paid for the cotton materials purchased in Belgium.

So, it must be held, as was held by the trial court, that appellant failed to produce satisfactory evidence showing the involved merchandise to have been in chief value of cotton.

It is proper to say that by permission of the court counsel for appellant filed a supplemental statement, following the oral argument, in which were presented calculations stated to convert "English pounds (currency) into Swiss Francs, using the daily rate of exchange figures as set forth in the London Times (the official conversion figures

accepted by the British Embassy in Washington)." The purpose of these calculations was to show that the prices which von Asten stated he paid for the English articles were higher than the prices at which Bussy stated they were sold "f. o. b. English port" from which it is argued we should infer that the prices von Asten paid included any costs of transportation, duties, etc. Even if we were at liberty to accept such calculations by way of argument, we think they could not be accepted as sufficient proof of all essential facts, but it is quite clear to us that we are not at liberty to take judicial knowledge of the exchange figures of foreign countries. They should have been proven by competent evidence.

There remains to be considered appellant's claims under paragraph 1501 (d), *supra*. This claim of the protest was overruled by the trial court with the statement:

\* \* \* as it is a manufacture of yarn composed of asbestos and another spinnable fiber (cotton) [the specific language of paragraph 1501 (a)], it is removed from the provision in subdivision (d) of paragraph 1501 for "all *other* manufactures" of asbestos.

This claim of appellant was not discussed in either the brief or the oral argument on behalf of the Government, beyond the broad statement that—

\* \* \* The article is more specifically provided for under the provisions of paragraph 1501 (a) than under the provisions of paragraph 1501 (d), which provides for all other manufactures of which asbestos is the component material of chief value.

It is frankly conceded by counsel for appellant that the two claims here pressed are inconsistent with each other, but he correctly states the rule to be that in a proper case an importer may make inconsistent claims in a protest, without thereby rendering the protest bad.

Counsel in primarily pressing the claim under paragraph 913 (a) evidently proceeded upon the theory that if the record established, as he claimed it did, that the articles were belts for machinery in chief value of cotton, they were more specifically described in paragraph 913 (a) than in paragraph 1501 (d), which provides broadly for "All other manufactures of which asbestos is the component material of chief value," and we agree with that theory, but, as already stated, do not agree that the evidence established the facts to support the claim under 913 (a). So, appellant is entitled to have the claim under 1501 (d) considered.

Appellant's contention on this phase of the controversy is, in substance, that in order to give effect to both paragraphs 1501 (a) and 1501 (d), the clause "of asbestos and any other spinnable fiber, \* \* \* and all manufactures [thereof]," appearing in 1501 (a) must be interpreted as meaning manufactures made *substantially wholly* of *asbestos*, and he cites the decision of this court in the cases of *United States* v.

*Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257, and *United States* v. *Guy B. Barham Co.*, 26 C. C. P. A. (Customs) 83, T. D. 49614.

In the first of the cases so cited, this court, speaking through Hatfield, Judge, said:

> It was held by this court in the case of *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124, in an opinion by Barber, Judge, that—

> The general rule appears to be well settled that when a tariff statute provides for duty upon an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein. *Arthur* v. *Butterfield*, 125 U. S. 70. *In re Wise*, 93 Fed. Rep. 443, *Drew* v. *Grinnell*, 115 U. S. 477, *Schiff* v. *United States*, 99 Fed. Rep. 555, *Robertson* v. *Edelhoff*, 91 Fed. Rep. 642.

> In statutes where Congress has provided for manufactures of a material and also manufactures in chief value of such material, in order to give effect to each provision, an exception to the general rule has been made, requiring, where the context demanded such exception, that language such as, "composed of," "manufactures of," "made of," and like expressions, should be interpreted as meaning "substantially wholly of such material." *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529; *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629.

Incidentally, it may be remarked that we did not find it necessary in the *Linen Thread Co.* case, *supra*, to apply the "exception" to the general rule there quoted from the *Vantine & Co.* case, *supra*, because it was found that full effect could be given to "each and every part" of the contesting paragraphs "without interpreting the words in paragraph 1011 'of flax,' as an exception to the general rule."

In the *Guy B. Barham Co.* case, *supra*, the "exception" was applied, the court, again speaking through Hatfield, Judge, pointing out that the case was not on all fours with the *Linen Thread Co.* case, *supra*. The substance of the here pertinent portion of our decision in that case is stated in the second syllabus as follows:

2. SPUN YARN—CONSTRUCTION, PARAGRAPH 1303 [TARIFF ACT OF 1930].
In view of the fact that the Congress provided in paragraphs 1306 to 1311, inclusive, for certain fabrics or articles *wholly or in chief value* of rayon or other synthetic textile, and in paragraph 1312 for manufactures *wholly or in chief value* of fibers and filaments of rayon or other synthetic textile, which provision, obviously, was intended by the Congress to include spun yarn composed *in chief value* of rayon or other synthetic textile, the court is of the opinion that the provision in paragraph 1303 for spun yarn was intended to be limited to such as was composed *wholly* or *substantially wholly* of rayon or other synthetic textile, otherwise, spun yarn in chief value of rayon or other synthetic textile would be provided for in both paragraphs at different rates of duty.

Paragraphs 1501 (a), 1501 (b), 1501 (c), and 1501 (d) appear in "Schedule 15—Sundries," and each of such paragraphs deals with asbestos articles or articles in part of asbestos. In 1501 (a) there is no limitation that asbestos shall be the component of chief value. Standing alone, the paragraph does not seem to require that the asbestos shall be the component of chief value of an article composed "of

asbestos and any other spinnable fiber," or of a "manufacture" therefrom.

It is noted that paragraph 1501 (b) (under which appellant made claims that were abandoned in the appeal to us) provides for certain articles "in part of asbestos," as does paragraph 1501 (c). The articles so provided for in those paragraphs broadly are manufactures, although that term is not used. This may account for the phraseology of paragraph 1501 (d) "all other manufactures."

However that may be, the question confronting us here is whether paragraph 1501 (d) may be given effect without interpreting the language which may be paraphrased to read "manufactures of asbestos and any other spinnable fiber" to mean that such manufactures must be wholly or substantially wholly of asbestos alone.

It seems quite clear that by the use of the word "other" in paragraph 1501 (d) Congress meant to provide for manufactures which were not provided for in any of the preceding paragraphs of the schedule. Paragraph 1501 (a) has no limitation with respect to value or chief value. The articles therein provided for may be composed wholly of asbestos or partly of asbestos and any other *spinnable* fiber. The "other manufactures" provided for in paragraph 1501 (d) may include articles wherein the asbestos is not combined with other spinnable fibers, and which are not included among the articles provided for in paragraph 1501 (b) and 1501 (a). We are of the opinion that paragraph 1501 (a) provides for a specific class or specific classes of manufactures, of which the merchandise at bar (in the absence of evidence making applicable paragraph 913 (a)) is an illustration, and that there is ample room for the application of 1501 (d) to other kinds of manufactures in which asbestos is the material of chief value. Hence, here, as in the *Linen Thread Co.* case, *supra* (with respect to the words "of flax"), there is nothing in the context which requires that the words "of asbestos and any other spinnable fiber" be interpreted as meaning "substantially wholly of asbestos."

The judgment of the United States Customs Court is *affirmed.*