United States v. Jovita Perez, Mexican-American Flavors Co., S. A., J. G. Philen Jr. Co., Bailey-Mora Co., Inc. (No. 4895)[1]

---

[1] C. A. D. 633.

United States Court of Customs and Patent Appeals, January 9, 1957

*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

*Lamb & Lerch (John G. Lerch* and *David A. Golden* of counsel) for appellees.

[Oral argument December 4, 1956, by Mr. FitzGibbon and Mr. Lerch]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, entered pursuant to its decision (Abs. 60033), sustaining protests on behalf of the importer against the collector's classification and duty assessment of merchandise consisting of 284 importations of flavoring syrup, imported from Mexico.

The importations, each of which consists of a mixture of sugar, water, and a small amount of flavoring and coloring matter, were assessed under paragraph 501 of the Tariff Act of 1930, as modified by the Peruvian Trade Agreement, T. D. 50670, by virtue of the provisions of the mixed-material clause of paragraph 1559 of the same Act, as though they consisted wholly of refined sugar (sucrose), testing by the polariscope at 100 sugar degrees, at a rate of 0.99375 cent per pound.

A sugar tax, under the provisions of section 3500 of the Internal Revenue Code (26 U. S. C. 1940 ed.), was also assessed thereon, but as the parties do not contest this assessment, no further reference will be made thereto.

Paragraph 501, as modified, reads as follows:

| Description of Article | Rate of Duty |
|---|---|
| Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above 75 sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above 50 sugar degrees and not above 75 sugar degrees. | 0.6421875¢ per lb. |
| And for each additional sugar degree shown by the polariscopic test. | 0.0140625¢ per lb. additional, and fractions of a degree in proportion. |

Paragraph 1559, insofar as pertinent, reads:

* * * and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. * * *

It was stipulated at the trial that:

1. the method of manufacture of the merchandise was as follows:

Into 2,500 gallon glass-lined mixing tanks are added 1,000 gallons of water; 15,070 pounds of granulated refined cane sugar; 140 fluid ounces of flavor; 29 gallons of caramel color, and 76 pounds of acid. More water is then added to bring the mix to 2,500 gallons, resulting in a brix of 57 degrees to 58 degrees;

2. all of the entries contained in all of the 284 consolidated cases were produced in the same manner;

3. the merchandise in all of the entries in all of the consolidated cases had a minus polariscopic reading on importation into the United States; and

4. the merchandise in all of the entries contained in all of the consolidated cases is identical with the merchandise involved in the case of *Jovita Perez et al.* v. *United States*, 42 C. C. P. A. (Customs) 156, C. A. D. 588.

In the light of the foregoing stipulations, the record and exhibits of the earlier *Perez* case were incorporated into the record in the case at bar.

The only evidence introduced at the trial was the reports of the Government chemist in four of the 284 consolidated protests.

Neither party disputes the applicability of paragraph 501, by virtue of the mixed-material clause, to the merchandise at bar. The sole question involved in this case concerns itself with the rate of duty to be assessed thereon, viz—is, as appellant contends, the component of chief value in the mixture at bar granulated, refined, cane sugar, testing by the polariscope above 75 sugar degrees and dutiable at

the highest rate under paragraph 501 (0.99375 cent per pound), or, is it sugar testing by the polariscope not above 75 sugar degrees and dutiable at 0.6421875 cent per pound, as urged by appellee?

Thus, this case, involving as it does the same parties, identical merchandise, as well as the identical issues involved in the incorporated *Perez* case, is, essentially, a retrial of that case.

The reason for this appeal is set forth in the opinion of the lower court:

> The retrial was insisted upon by the defendant because it feels that the Court of Customs and Patent Appeals may have misunderstood the facts of the formed [sic] case in respect to the sugar which is the component material of chief value in the syrup imported.

It would serve no useful purpose to reiterate what was said by this court in the incorporated *Perez* case. Suffice it to say that it was concluded, upon consideration of the fact that the imported syrup tested by the polariscope at *minus* 13.8 sugar degrees, that *invert* sugar, and not *sucrose*, was the component material of chief value.

It was stated therein:

> Since the component of chief value of the mixture is not sucrose but reducing or invert sugars, and since the reducing sugars in the mixture under consideration cannot possibly test by the polariscope above 75 sugar degrees, but must give a negative polariscopic reading to overcome a positive reading attributable to the sucrose, we think that the component of chief value of the imported mixture is sugar testing by the polariscope not over 75 sugar degrees.

In effect, this court held in the incorporated *Perez* case that the rate of duty to be assessed on the syrup was to be determined on the basis of the component material of chief value *as found in the article at the time of importation into this country*. Though granulated, refined, cane sugar unquestionably was the component material of chief value *before* said sugar was mixed with the other component materials of the syrup, the syrup at the time of importation contained as its component material of chief value invert sugar, which was produced by the action of the acid on the refined sugar *after* mixing.

Appellant now asserts, as it contended in its petition for rehearing in the incorporated *Perez* case, which petition was denied on April 28, 1955, that, when applying the mixed-materials clause, the value of the component materials of a mixture should be determined as of the time when they have reached such a condition that nothing remains to be done upon them by the manufacturer except to put them together, and cites numerous authorities in support of its argument. Since granulated, refined, cane sugar was the component material of chief value at the time the several components were ready to be mixed together, appellant continues, and since such sugar is composed wholly of sucrose and tests by the polariscope at 100 sugar degrees, the imported syrup should be regarded as though it were composed wholly

of sugar testing above 75 sugar degrees and dutiable at the highest rate for sugars under paragraph 501 (0.99375 cent per pound).

We have carefully considered each of the cases cited by appellant, and while at first blush they appear to support appellant's contentions, upon closer examination they reveal the weak foundation upon which appellant stands.

Paragraph 1559 states that:

* * * the value of each component material shall be determined by the ascertained value of such material *in its condition as found in the article.* * * * [Emphasis added.]

This phrase is not without judicial interpretation. In a number of cases before this court and its predecessor in Customs jurisdiction, the Court of Customs Appeals, it has been held that to determine the component material of chief value, the rule is that the value of the materials of which an article is composed shall be ascertained at the time when they have reached such condition that nothing remains to be done to them except to put them together. *Vandiver* v. *United States,* 2 Ct. Cust. Appls. 505, T. D. 32246; *United States* v. *Gredelue,* 5 Ct. Cust. Appls. 298, T. D. 34476; *United States* v. *Burley & Tyrrell Co.,* 5 Ct. Cust. Appls. 401, T. D. 34938; *United States* v. *Fondeville & Von Iderstine,* 7 Ct. Cust. Appls. 135, T. D. 36457; *Field & Co.* v. *United States,* 7 Ct. Cust. Appls. 332, T. D. 36876; *Chin & Co.* v. *United States,* 11 Ct. Cust. Appls. 124, T. D. 38932; *United States* v. *Bernard, Judae & Co.,* 15 Ct. Cust. Appls. 172, T. D. 42231; *United States* v. *Mrs. S. Bacharach,* 18 C. C. P. A. (Customs) 353, T. D. 44612; *United States* v. *Rice-Stix Dry Goods Co.,* 19 C. C. P. A. (Customs) 232, T. D. 45337; *Adolph Goldmark & Sons Corp.* v. *United States,* 31 C. C. P. A. (Customs) 6, C. A. D. 241; *United States* v. *H. A. Caesar & Co.,* 32 C. C. P. A. (Customs) 142, C. A. D. 299.

The reason for this *apparent* disregard of the plain and unambiguous direction to ascertain the value of each component part *in its condition as found in the article* is tersely stated in the *Bernard* case, *supra,* which involved tooth brushes, each composed of a number of bristles set in a celluloid handle:

The uniting of the component materials to make the finished article is a labor bestowed upon the article itself and not upon the component material. These bristles were ready to become a part of the brushes before they were inserted in the handle. The insertion of the same, the binding them in place with wire staples, * * * and the subsequent trimming all were labor done upon the brush and not upon the bristles, within the meaning of the statute.

It is obvious, taking into consideration the aforequoted explanation of the rule, that the rule, in fact, is not a departure from the plain language of the statute. At best, it is a means to implement this directive. In its effect, the rule does provide for the ascertaining of the value of each component material in its condition as found in the

article, but implicit in the rule is a recognition of the fact that labor and skill applied to the component after combination with the other component materials, viz—to the entire mixture, cannot be attributed to said component taken alone.

But in no case decided by this court or its predecessor, has there been involved other than a *mechanical* mixture of materials. In each case cited, the component material under consideration was the *same* material which existed just prior to the point in time at which said material was combined with the other materials which formed the mixture, and could be recognized as such in its condition as found in the article. For this reason and this reason only was the court able to utilize a rule which took into consideration the component materials as they existed prior to their combination with one another, when the statute provides that their value shall be determined in their condition as found in the article.

In the instant case, such a mechanical mixture is not present. The sugar in the imported syrup is not the same sugar which was mixed with the other component materials prior to importation. Between the time of mixing and the time of importation the sugar had undergone a *chemical* change and was no longer 100 per cent sucrose.

Thus, in this case there is no room for the application of the rule propounded by the cited cases. Rather, the syrup at bar must be considered to be of chief value of invert sugar and assessed as sugar testing by the polariscope under 75 sugar degrees, as was correctly stated in the incorporated *Perez* case, *supra*. To hold otherwise would be, in effect, to hold that the words "in its condition *as found in the article*" are meaningless. This we cannot do. As aforesaid, the judicial construction given to these words was limited to situations in which the condition of the component as found in the article was not essentially different from that of the component before mixing.

It is worthy of note that the Supreme Court, in the case of *Murphy* v. *Arnson*, 96 U. S. 131 (1877), on a similar set of facts, reached the opposite conclusion. That case involved an importation of nitrobenzole, a compound formed by the chemical combination of nitric acid and benzole. The court decided that the compound fell plainly within the words of the last clause of section 20 of the act of August 30, 1842 (5 Stat. 565),[1] which section was the prototype of the mixed-materials clause of paragraph 1559 of the Tariff Act of 1930, and that since the compound was formed from nitric acid and benzole, assessment must be made on the basis of the one of these two constituents which was dutiable at the highest rate. The mixed-materials clause there under consideration, however, contained no clause which defined "component material of chief value" or which indicated at what

---

[1] * * * and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which any of its component parts may be chargeable.

point the value of the component material of chief value was to be assessed, as does paragraph 1559. Such a clause, however, was added to the mixed-material paragraph in section 5 of the tariff act of 1890, and was retained in the successor paragraphs thereto in each of the subsequent tariff acts. This language, which did not exist at the time of the *Murphy* decision, leads us to conclude that Congress did not intend that the construction given to the mixed-materials clause in the *Murphy* case be continued.

For the foregoing reasons, we reaffirm the decision of the incorporated *Perez* case, *supra*, and *affirm* the decision of the lower court.

JACKSON, J., Retired, recalled to participate in place of COLE, J., absent because of illness.

O'CONNELL, J., was present at the argument of this case but, because of illness, did not participate in the decision.